**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRIS BIOTECHNOLOGIES, INC., | No. C 12-06232 JSW |
| Appellant, | **ORDER GRANTING HELLER'S MOTION TO STRIKE AND AFFIRMING ORDER OF BANKRUPTCY COURT** |
| v. | |
| HELLER EHRMAN LLP, | |
| Appellee. | |

The matter comes before the Court upon consideration of the appeal filed by Appellant and creditor, Iris Biotechnologies, Inc. ("Iris"), from the bankruptcy court's order, dated November 15, 2012, denying Iris's motion to allow a late filing of a malpractice claim. Appellee and debtor, Heller Ehrman LLP ("Heller"), has moved to strike certain documents that Iris submitted in support of the appeal. Pursuant to Civil Local Rule 16-4, the Court deems this case submitted on the papers without oral argument. After review of the record on appeal, consideration of the parties' papers, and the relevant legal authority, the Court hereby GRANTS Heller's motion to strike and AFFIRMS the bankruptcy court's judgment.

## BACKGROUND

Simon Chin ("Chin") founded Iris on February 16, 1999, and acted as President and CEO of the company. (Deposition of Simon Chin ("Chin Depo") at 11:16-17.)[1] Heller previously represented Iris in various patent and corporate matters. (Record on Appeal ("RA") 45, Declaration of Shelley Salinero ("Salinero Decl."), ¶ 3.) James Fox ("Fox"), a former

---

[1] All references to the deposition of Simon Chin derive from Record on Appeal documents 23 and 25. All references to exhibits to the deposition of Simon Chin derive from Record on Appeal documents 24 and 26.

1  associate at Heller, handled Iris's patent matters and Bruce Jennet ("Jennet"), a former partner
2  at Heller, handled Iris's corporate matters. (RA 45, Salinero Decl., ¶¶ 3-4.)

3　　　　In 2000, Iris applied to the United States Patent and Trademark Office ("USPTO") for a
4  patent on its artificial intelligence system for genetic analysis. (RA 18, Corrected Declaration
5  of Simon Chin ("Corrected Chin Decl."), ¶ 4.) On April 7, 2006, Iris directed Fox to file a
6  patent continuation application, No. 11/399,733 ("PCA 11/399,733"), to broaden the scope of
7  claims advanced in the original patent. (*Id.*, ¶ 5.) The USPTO issued Iris's original patent on
8  June 13, 2006. (*Id.*, ¶ 4.)

9　　　　On August 16, 2007, Iris received a letter from Heller entitled "Disengagement As
10 Counsel To Iris Biotechnologies, Inc," ("Disengagement Letter"), which purported to confirm
11 that Heller would no longer act as Iris's counsel. (Chin Depo. at 78:19-25; Chin Depo., Ex. 8.)
12 On September 4, 2007, Jennet e-mailed Chin to wish him well. (Chin Depo., Ex. 11.) Chin
13 replied and acknowledged Heller's work throughout the years. (Chin Depo. at 117:2-13.) On
14 November 5, 2007, Heller submitted a request to the USPTO seeking to withdraw as Iris's
15 patent attorney of record. (RA 7, Declaration of Simon Chin ("Chin Decl."), Ex. D.)

16　　　　On November 21, 2007, Heller e-mailed Iris ("November E-mail") to follow up on the
17 Disengagement Letter and requested instructions as to whom to transfer Iris's patent files.
18 (Chin Depo. at 117:15-118:11; Chin Depo., Ex. 12.) On December 10, 2007, after it did not
19 receive a response from Iris about whom to transfer the files, Heller forwarded Iris's original
20 patent files to Chin's attention. (Chin Depo. at 118:5-9; Chin Depo., Ex. 13.) Heller delivered
21 and included documents relating to PCA 11/399,733 in the package of transferred materials.
22 (Chin Depo, Exs. 12-13.) Heller also drafted a letter ("Transfer Letter") that advised Iris to file
23 all necessary change of address and powers of attorney forms with the USPTO for all matters
24 included in those materials. (Chin Depo., Ex. 13.) Subsequently, on December 20, 2007, Chin
25 e-mailed Fox to challenge and question Heller's competence as a law firm in handling Iris's
26 legal matters. (Chin Depo. at 135:23-140:1; Chin Depo, Ex. 14.)

27　　　　On March 13, 2008, the USPTO denied Heller's request to withdraw as Iris's USPTO
28 attorney of record. (RA 8, Chin Decl., Ex. E.) The USPTO sent notices to both Heller and

1    Chin.  (*Id*.)  On March 21, 2008, the USPTO issued a notice of a non-final rejection of PCA
2    11/399,733 ("2008 Rejection Notice") and advised that a timely filed Terminal Disclaimer
3    could be used to overcome the non-final rejection of PCA 11/399,733.  (RA 9, Chin Decl., Ex.
4    F at 4.)  Because Iris never filed change of address and power of attorney forms, the USPTO
5    sent the 2008 Rejection Notice to Heller.  (*Id*. at 2.)  On April 4, 2008, Heller allegedly
6    forwarded Chin the original 2008 Rejection Notice and warned Chin that Heller no longer
7    handled Iris's patent matters.  (RA 33, Declaration of Richard Anderson, ¶ 5, Ex. B.)  The
8    bankruptcy court concluded that the record did not support a finding that Iris received this
9    document.  (RA 68, Nov. 15, 2012 Hearing Tr. at 6:11-15.)
10        On October 7, 2008, the USPTO issued a notice of abandonment of PCA 11/399,733
11   ("2008 Abandonment Notice") for failure to respond to the 2008 Rejection Notice.  (RA 13,
12   Chin Decl., Ex. J.)  On October 10, 2008, Heller allegedly sent a letter to Chin that enclosed the
13   2008 Abandonment Notice from the USPTO and notified him again that Heller had ceased to
14   handle Iris's legal matters.  (RA 51, Declaration of Jennifer Vail, ¶ 4, Ex. B.)  The bankruptcy
15   court also concluded that the record would not support a finding that Iris received this
16   document.  (RA 68, Nov. 15, 2012 Hearing Tr. at 6:19-23.)
17        On December 28, 2008, Heller filed for bankruptcy relief.  (RA 45, Salinero Decl., ¶ 7.)
18   Chin first learned about the Heller bankruptcy from the news.  (Chin Depo. at 87:3-9.)  By
19   2009, Iris ceased to communicate with anyone from Heller regarding its legal matters.  (*Id*. at
20   151:14-21.)  In fact, after Chin learned about Heller's bankruptcy, Chin neither attempted to
21   personally contact Heller nor requested that anyone on his behalf contact Heller.  (*Id*. at 153:12-
22   15.)
23        In 2009, Iris retained John Jeffrey ("Jeffrey"), a Canadian patent attorney, to correspond
24   with the Canadian Patent Office and review the prosecution of related United States and
25   European patent applications.  (Chin Depo. at 220:4-20; Chin Depo, Ex. 27.)  In 2009, Jeffrey
26   forwarded a report to Chin that detailed the status of Iris's United States and European patent
27   applications and that included information about PCA 11/399,733.  (Chin Depo. at 233:1-25.)
28   Chin did not review these materials until June 2011, due to "more important things."  (*Id*. at

3

260:5-8.) Once Chin reviewed Jeffrey's report, Chin instructed Jeffrey to apply for re-issuance and broadening of a Canadian patent with the Canadian patent office. (*Id*. at 265:22-266:6.) The Canadian patent covered the same invention set forth in PCA 11/399,733. (*Id*. at 157:1-6.) As a result of Jeffrey's attempt to re-issue and broaden the Canadian patent, in August 2011, Jeffrey reported back to Iris that PCA 11/399,733 had been abandoned. (*Id*. at 266:2-5; Chin Depo. Exs. 4, 21.)

On April 23, 2012, Chin contacted Tom Willoughby ("Willoughby"), counsel for the Heller Creditors Committee, to discuss his view that Iris had a malpractice claim against Heller. (Corrected Chin Decl., ¶ 17.) Willoughby informed Chin that the deadline to file a malpractice claim expired on April 27, 2009. (Chin Depo. at 188:20-25., Chin Depo., Ex. 23.) On April 30, 2012, Iris sent Willoughby a letter outlining Iris's malpractice claim against Heller. (Chin Depo., Ex. 4.) Willoughby referred the matter to special counsel for the bankruptcy plan administrator, and, on June 11, 2012, the special counsel rejected Iris's malpractice claim citing to Iris's failure to file a claim before the claims bar deadline. (Chin Depo., Ex. 23.) The special counsel also rejected Iris's malpractice claim because Iris filed an untimely claim that contravened Heller's approved bankruptcy plan order and because Heller would experience prejudice from the delayed claim. (*Id*.)

On August 20, 2012, Iris filed a motion to allow a late filing of a malpractice claim in the United States Bankruptcy Court for the Northern District of California. (RA 1, Iris Motion to Allow Late Filing.) Following oral argument, the bankruptcy court denied Iris's motion and set forth its finding on the record. (RA 68, Nov. 15, 2012 Hearing Tr. at 3:22.) On November 20, 2012, the bankruptcy court issued an order that denied Iris's malpractice claim for the reasons set forth on the record. (*Id*.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.    Heller's Motion to Strike.**

Heller moves to strike two documents submitted by Iris that it claims are not part of the record on appeal. Federal Rule of Bankruptcy Procedure 8006 provides that the record on

4

appeal "shall include the items designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Papers not filed with the bankruptcy court or admitted into evidence by that court are not part of the bankruptcy clerk's record and cannot be part of the record on appeal. *Cf. Kirshner v. Uniden Corporation of America*, 842 F.2d 1074, 1077 (9th Cir. 1988) (noting similarly that papers not filed in the district court or admitted into evidence by that district court are not part of the district clerk's record and cannot be part of the record on appeal).

### 1. Exhibit 3 to the February Declaration of Daniel R. Sterrett.

In support of its opening brief, Iris submitted a declaration from Daniel R. Sterrett, dated February 1, 2013. Heller moves to strike Exhibit 3 to that declaration. Exhibit 3 outlines the transaction history for PCA 11/399,733 from April 2006 to January 2012. Although Exhibit 3 does not contain a bankruptcy court docket number, Iris alleges that Heller previously filed and asked for judicial notice of a similar print out from the USPTO's website. (RA 29, Heller Request for Judicial Notice ("Heller RJN"), Ex. 1.) Although both documents derive from the USPTO website, the parties actually submitted different documents from different tabs on the website. Because both parties neither filed nor designated Exhibit 3 with the bankruptcy court, Exhibit 3 cannot be construed as part of the record on appeal.

Accordingly, the Court GRANTS Heller's motion to strike Exhibit 3. Although the Court grants the motion to strike, the Court notes that the information upon which Iris sought to include - that Heller remained the counsel of record in the USPTO's records until September 13, 2011 - is contained within the document that Heller submitted in support of its Request for Judicial Notice. (*See* Heller RJN, Ex. 1.)

### 2. Exhibit 1 to the March Declaration of Daniel R. Sterrett.

Heller also moves to strike Exhibit 1 to the declaration of Daniel Sterrett, dated March 22, 2013 ("Exhibit 1"), which Iris submitted in support of its reply brief. Exhibit 1 details Heller's billing and invoice statements to Iris for services rendered from January 1987 until April 2008. Although Iris previously designated with the bankruptcy court the billing

5

statements dated April 2008, Iris failed to file or designate with the bankruptcy court the billing statements dating back to January 1987.

Iris asserts that a May 20, 2008 e-mail included an attachment of the billing statements dating back to January 1987. (*See* RA 12, Chin Decl., Ex. I) Iris argues that this 2008 e-mail provides sufficient grounds to incorporate the entirety of the billing statements into the record on appeal and deny the motion to strike. However, pursuant to Federal Rule of Bankruptcy Procedure 8006, the Court cannot allow Iris to create a new record on appeal. *Cf. Kirshner*, 842 F.2d at 1077 (noting that papers not filed in the district court or admitted into evidence by that district court are not part of the record on appeal). The Court also notes that even if the Court allowed the additional billing statements into the record, it does little to further Iris's arguments that Heller continued to represent Iris, notwithstanding Heller's prior Disengagement Letter. (*Compare* Sterrett Decl., Ex. 1 at 33 *with* Chin Depo., Ex. 8) (showing that August 31, 2007 represented Heller's last billing entry and August 16, 2007 marked the date of Heller's disengagement as counsel). Accordingly, the Court GRANTS Heller's motion to strike Exhibit 1 insofar as it includes billing statements for dates prior to April 2008.

**B.      Appeal of Bankruptcy Court's Order Denying Iris's Motion to File a Late Claim.**

**1.      Standard of Review.**

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. The Court reviews for abuse of discretion a bankruptcy court's decision to grant or deny a motion for an extension of time to file a claim on the grounds of excusable neglect. *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 398 (1993) ("To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be excusable.") (internal citations omitted); *cf. Pincay v. Andrews*, 389 F. 3d 853, 858 (9th Cir. 2004) (reviewing district court's decision to grant motion for extension of time to file appeal based upon excusable neglect for abuse of discretion"). The Court must affirm unless it has the definite and firm conviction that the lower court committed a clear error of judgment in the

6

conclusion it reached after weighing the relevant factors. *Pincay*, 389 F. 3d at 858 (citing *Marx v. Loral Corp.*, 87 F. 3d 1049, 1054 (9th Cir. 1996)); *see also Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2012) ("[W]e reverse under the abuse of discretion standard only when the district court reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record.").

### 2. The Bankruptcy Court Did Not Abuse its Discretion.

Iris argues that the bankruptcy court erred when it denied its motion for leave to file a late malpractice claim based upon excusable neglect. Federal Rule of Bankruptcy Procedure 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline resulted from "excusable neglect." Because Congress has not provided guidance to determine what sorts of actions constitute excusable neglect, the Court's "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. These circumstances include: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*; *see also Pincay* 389 F.3d at 855. Iris only takes issue with the bankruptcy court's application of the third *Pioneer* factor – the reason for the delay. Under the third *Pioneer* factor, the Court must consider Iris's reason for the delay and examine whether the delay remained within Iris's reasonable control. *See Pioneer*, 507 U.S. at 395; *Pincay*, 389 F.3d at 858.[2]

Iris contends that the record shows that Heller remained counsel of record for Iris, made misrepresentations to it, omitted material information and, thus, argues that Heller actually caused Iris's delay in filing a claim. In support of this argument, Iris relies on *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006) and *Challas v. Goetz*, 2007 WL 3095418 (Bankr. N.D. Cal.

---

[2] The other factors under *Pioneer* and *Pincay* requires the bankruptcy court to examine the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, and the good faith intentions of the movant. *See Pioneer*, 507 U.S. at 395; *see also Pincay*, 389 F.3d at 858. Iris does not specifically dispute the bankruptcy court's conclusions with respect to these factors. The Court also finds that the bankruptcy court did not abuse its discretion in its analysis of these factors.

7

Oct. 19, 2007). However, in *In re Zilog*, the court of appeals found excusable neglect based upon affirmatively misleading e-mails sent by Zilog attorneys that caused Zilog employees to file untimely claims. 450 F.3d at 1006-1007. In this case, and despite remaining counsel of record under the USPTO, Heller never relayed misleading statements. Rather, it repeatedly advised Iris to protect its rights in, for example, the Disengagement Letter, the November E-mail, and the Transfer Letter. The bankruptcy court also noted that Chin knew of Heller's dissolution, thought Heller lacked competence, and knew that information about Iris' patents existed on the USPTO website. This Court cannot say it was implausible for the bankruptcy to conclude on that factual record that Heller was not the reason Iris delayed in seeking to file a late malpractice claim.

The Court also finds Iris' reliance on *Challas* inapposite. There, the court addressed whether a cause of action was discharged, pursuant to 11 U.S.C Section 1141(d), upon confirmation of a bankruptcy plan. The answer to that question depended upon whether the creditor had a "fair contemplation" that he might have had a claim against the debtor before confirmation. *Challas* does not address or make rulings on what sort of actions constitutes excusable neglect. To the extent Iris relies on *Challas* to argue that it was not aware of a potential malpractice claim until well after Heller filed for bankruptcy, the Court finds *Challas* distinguishable on its facts.

As the bankruptcy court recognized, Heller provided Iris with multiple warnings that it should protect itself in order to avoid experiencing prejudice to its rights. (RA 68, Nov. 15 Hearing Tr. at 8:17-11:7.) Again, by way of example: the August 2007 disengagement letter severing the attorney-client relationship between Heller and Iris; the November 2007 e-mail inquiring where to transfer Iris's legal files; the December 2007 delivery of Iris's patent files; and finally, the clear understanding that Heller filed for Chapter 11 dissolution in 2009. (*Id.*) For the reasons outlined below, the Court finds that the bankruptcy court did not abuse its discretion when it concluded that these warnings supported its conclusion that Iris caused its own delay in filing a claim as well as exerted reasonable control over the delay.

First, the bankruptcy court noted that the Disengagement Letter provided significant caution to Iris. In particular, Heller explicitly stated that it would "no longer act as counsel to Iris Biotechnologies, Inc., and [Heller would] have no further responsibility to render legal services in connection therewith." (Chin Depo., Ex. 8.) Heller did not, however, that it would "remain available to confer with [Iris] or [Iris's] new attorney to the extent necessary to avoid prejudice to [Iris's] rights." (*Id*.) Moreover, Heller advised Iris that, "in connection with the termination of [Heller's] services for Iris, [Heller would], ... deliver files to [Iris], or to an attorney whom [Iris] designate[s] in writing to receive the files." (*Id*.) Heller explicitly communicated to Iris its view that their attorney-client relationship had not only ended but also that Iris needed to take steps to protect its rights. These cautionary statements, taken as a whole, negate Iris's contention that Heller misled Iris and prevented Iris from filing a timely malpractice claim. In actuality, Heller's Disengagement Letter represents one of many warnings that clearly informed Iris to protect its rights as well as left Iris with reasonable control over filing a timely claim.

Second, the bankruptcy court noted that Heller warned Iris to protect its rights in its November E-mail. In particular, Korey Mingus, a patent analyst at Heller, stated that "I would like to take this time to follow-up with you regarding Mr. Jennett's disengagement letter sent to you on August 16, 2007. We have, as of yet, not received instructions as to whom to transfer the patent files[.] ... We are therefore now preparing to transfer to your attention the patent files[.] ... If you would like us to transfer these files to the attention of someone else, please advise us by November 30, 2007." (Chin Depo., Ex. 12.) At a minimum, the e-mail alerted and reminded Iris that Heller had ceased to represent Iris in connection with its patent matters. Iris's failure to provide information to Heller about where to transfer Iris's files, despite Heller's several attempts to acquire such knowledge, reinforces the conclusion that Iris exerted reasonable control over the delay.

Third, the bankruptcy court noted that Heller's Transfer Letter, sent in conjunction with the transferred patent files, represented another warning to Iris to protect its rights and emphasized that Iris exercised reasonable control over its delay. When Heller transferred Iris's

9

1  patent files, Heller included files relating to PCA 11/399,733 in "Box 6" and stated Iris would
2  be responsible for filing all necessary change of address forms, power of attorney forms, and
3  extensions of time for all of the matters included in the transferred documents with the USPTO.
4  (Chin Depo., Ex. 13.)  Heller also stated, "[w]e have not made copies of the files being
5  transferred. ... Also enclosed is a current docket.  The information is considered accurate, but
6  should not be relied on without first reviewing the files.  You should review all files promptly to
7  verify the status of each matter." (*Id.*)  Heller also provided Iris with all of Iris's patent
8  documents.  In an e-mail Chin sent to Fox on December 20, 2007, Chin even acknowledged
9  transfer and receipt of "six boxes of papers." (Chin Depo., Ex. 14.)  Despite Heller's repeated
10 warnings and cautionary letters, Iris appears to rely on its ignorance of the contents of the
11 transferred files as a basis to argue its neglect was excusable.  However, the bankruptcy court
12 noted that the parties involved were a sophisticated, intellectual client and a dissolving law firm.
13 (RA 68, Nov. 15 Hearing Tr. at 8:17, 9:19.)  It also noted that its conclusion might have been
14 different if "this was simply a dispute between a former client of an ongoing law firm." (*Id.* at
15 9:8-10.)  The Court cannot say that these facts, coupled with the warnings encompassed in the
16 Disengagement and Transfer letters render the bankruptcy court's conclusion "illogical,
17 implausible, or without support in the inferences that may be drawn from the record facts."
18 *Kode*, 596 F.3d at 612.

19       In any event, in the Transfer Letter, Heller clearly suggested that Iris review its files,
20 alerted Iris to take the necessary steps to ensure the proper handling of its legal matters, and
21 warned Iris of possible prejudice to its rights should it fail to comply.  Moreover, because Heller
22 no longer retained control over Iris's original files, the Court cannot find that the bankruptcy
23 court abused its discretion in concluding that Iris could have taken steps to protect its own
24 interests, or at the very least, understood that its rights would be compromised with continued
25 inaction.  Iris simply failed to heed Heller's warnings.

26       Fourth, the bankruptcy court noted that Chin's knowledge of Heller's dissolution
27 warned Iris once again of its need to protect its rights and further evidenced Iris's control over
28 its delay in filing a claim.  Chin testified he probably first learned about the Heller bankruptcy

1  from the news. (Chin Depo. at 151:5.) After 2009, however, Iris ceased to communicate with
2  anyone from Heller regarding its legal matters. (*Id*. at 151:17-18.) Chin neither attempted to
3  personally contact nor requested that anyone on his behalf contact Heller. This behavior
4  reinforces that Chin not only knew about Heller's bankruptcy but also recognized that Heller no
5  longer represented Iris.

6  Fifth, the bankruptcy court also cited to the fact that Chin believed that Heller "lacked
7  competence." Chin's statement derived from an e-mail, dated December 20, 2007, that Chin
8  sent to Fox following his receipt of Iris's transferred patent files. In that e-mail, Chin stated, "to
9  learn that we were not even notified about the patent that was issued to us three months ago, or
10 about these two Canadian Office Actions when they were received, that goes further to
11 confirmed [*sic*] what we said a few months ago that Heller is no longer the same firm that we
12 hired back in 1999. It appears that Heller Ehrman has evolved into a firm that has problems not
13 only with greed, but also competence and ethics." (Chin Depo., Ex. 14.) Although Iris disputes
14 that Chin's e-mail shows that Chin believed Heller lacked competence, based on its review of
15 the e-mail, the Court cannot say the bankruptcy court's conclusion is without support.

16 Sixth, the bankruptcy court noted that Chin knew valuable and significant information
17 about Iris's patents existed on the USPTO website, even if he did not know how to access it
18 (Chin Depo. at 171:2-6.) The bankruptcy court concluded that those facts also showed that "the
19 delay and who had control over that delay land[ed] squarely on Iris's lap." (RA 68, Nov. 15
20 Hearing Tr. at 10:14-16.) The Court cannot say that it was "illogical, implausible, or without
21 support in the inferences that may be drawn from the record facts[3]," for the bankruptcy court to
22 conclude that Chin exercised significant control and had ample time to review Iris's files,
23 maintain Iris's patents, and file a more timely malpractice claim.

24 Seventh, and finally, the bankruptcy court noted that "had Iris attended to its own
25 protection of its own interest and come forth much more quickly, even after the claims bar date
26 and asked to file a late claim, then indeed [the third factor] would weigh less heavily against

---

[3]      *Kode*, 596 F.3d at 612.

11

[Iris] and in favor of Heller."[4] (*Id*. at 10:19-23.) In particular, instead of reviewing the patent files Heller sent to Chin in December 2007 to protect Iris's rights, Chin focused on and stayed "busy" with Iris's initial public offering. (Chin Depo. at 118:1-119:20.) Later in 2009, when Jeffrey sent Chin a report on Iris's intellectual properties in the U.S. and Europe, Chin "did not have the time" to read through the reports and did not do so until 2011. (Chin Depo. at 157:5-158:3.) Furthermore, when Jeffrey notified Chin of the abandoned PCA 11/399,733, Chin instead responded by directing Jeffrey to reactivate his abandoned patent. (*Id*. at 156:4.) Though the Court understands that companies engaged in business often juggle a plethora of responsibilities ranging from events and activities to regulatory filings and corporate deadlines, the press of business does not justify a finding of excusable neglect. *See e.g.*, *Selph v. Council of City of Los Angeles*, 593 F.2d 881, 883 (9th Cir. 1979), *overruled on other grounds by United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1269 (1985). Chin's busy schedule and attendance to his other priorities cannot be construed as a basis for finding excusable neglect.

Under *Pioneer* and *Pincay*, courts examine both the reason for Iris's delay in filing a late claim *and* whether Iris exerted reasonable control over the delay in filing a late claim–a point that Iris ignores. *See Pioneer*, 507 U.S. at 395; *see also Pincay*, 389 F.3d at 858. The bankruptcy court properly analyzed the third factor under both prongs. Therefore, after weighing all of the relevant circumstances relating to the third factor, the Court finds that the bankruptcy court did not abuse its discretion in refusing to find excusable neglect and holding that the reason for the delay, including whether it reasonably rested in the control of Iris, weighed heavily in favor of Heller and heavily against Iris.

//

//

---

[4] Even if the Court accepted Iris's allegation that Iris first discovered Heller's malpractice when Jeffrey informed Iris, on August 22, 2011, that PCA 11/399,733 was abandoned, the Court remains unpersuaded that the bankruptcy court abused its discretion in holding that Iris still should have filed a more timely malpractice claim. Iris did not contact Heller's creditors committee until April 23, 2012, and provides no information that would explain the reason for the delay between August 2011 and April 2012.

**CONCLUSION**

The Court recognizes Iris must cope with a harsh result; however, the Court finds the bankruptcy court did not abuse its discretion in applying the factors set forth in *Pioneer* and *Pincay*. The Court AFFIRMS the bankruptcy court's decision on the motion to allow a late filing of a malpractice claim.

The Court shall enter a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 12, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE